**No. 12-2056, 12-2060, 12-3794, 12-3875**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

RONALD C. TUSSEY, et al.,

Plaintiffs-Appellees,

– against –

ABB, INC., et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the Western District of Missouri

**BRIEF OF LAW PROFESSORS FRANKEL, BLACK AND WEBBER AS
*AMICI CURIAE* IN SUPPORT OF PLAINTIFFS- APPELLEES AND IN
SUPPORT OF AFFIRMANCE**

Barbara Black
Charles Hartsock Professor of Law
Director, Corporate Law Center
University of Cincinnati College of Law
P.O. Box 210040
Clifton Ave. & Calhoun St.
Cincinnati, OH 45221-0040
513-556-0113
barbara.black@uc.edu
*Counsel of Record*

*Attorney for Amici Curiae*

i

## STATEMENT OF COMPLIANCE WITH RULE 29

*Amici Curiae* certify that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person other than *amici curiae* contributed money that was intended to fund preparing or submitting the brief.

ii

# TABLE OF CONTENTS

STATEMENT OF COMPLIANCE WITH RULE 29 ................................................. ii

TABLE OF AUTHORITIES ................................................................................. iv

STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE ........... vi

SUMMARY OF ARGUMENT ............................................................................. 1

ARGUMENT ........................................................................................................ 3

INTRODUCTION ................................................................................................ 3

I.   ERISA IMPOSES ON PLAN FIDUCIARIES THE HIGHEST STANDARD OF LOYALTY DERIVED FROM FIDUCIARY LAW. ............................... 4

    A.   Fiduciary Law is Based on Principles of Entrustment and Dependence. ........................................................................................ 4

    B.   ERISA Borrows from Trust Law the Highest Standard of Undivided Loyalty ............................................................................................... 8

II.   THIS CASE DEMONSTRATES WHY ERISA'S HIGH FIDUCIARY STANDARD OF UNDIVIDED LOYALTY IS NECESSARY TO PROTECT PLAN PARTICIPANTS AND CANNOT BE RELAXED ....... 12

CONCLUSION ................................................................................................... 17

Appellate Case: 12-2060     Page: 3     Date Filed: 05/31/2013 Entry ID: 4040995

# TABLE OF AUTHORITIES

## CASES

*Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993)................................................................................8

*Boyle v. Anderson,* 68 F.3d 1093 (8th Cir. 1995) ................................................9, 10

*Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585 (8th Cir. 2009)....................8, 16, 17

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir.1982)....................................................8

*Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1 (1987)...........................................9

*Martin v. Feilen,* 965 F.2d 660 (8th Cir. 1992) .....................................................4, 11

*Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985) ............8

*Ruppert v. Principal Life Insurance Co.*, 796 F. Supp.2d 959 (S.D. Iowa 2010) ........................................................................................................16

*SafeCard Servs., Inc. v. Halmos,* 912 P.2d 1132 (Wyo. 1996) ................................6

## STATUTES

29 U.S.C. § 1104(a)(1)................................................................................................9

## OTHER AUTHORITIES

Austin Wakeman Scott et al., SCOTT AND ASCHER ON TRUSTS (5th ed. 2007).6, 7, 11

CONCISE OXFORD DICTIONARY OF CURRENT ENGLISH.................................................9

Appellate Case: 12-2060     Page: 4     Date Filed: 05/31/2013 Entry ID: 4040995

Joseph Kartiganer and Raymond H. Young, American Bar Association Probate &
   Property March/April, 2003 17 Probate & Property 18 FEATURE THE UTC:
   HELP FOR BENEFICIARIES AND THEIR ATTORNEYS (203)......................6

Restatement (Second) of Agency...........................................................................11

Restatement (Second) of Trusts............................................................................11

Restatement (Third) of Trusts...............................................................................11

Tamar Frankel, FIDUCIARY LAW (Oxford University Press 2010)… ...................5, 7

Tamar Frankel, *Fiduciary Law*, 71 CALIF. L. REV. 795 (1983).............................5, 6

Tamar Frankel, *Fiduciary Duties,* in 2 THE NEW PALGRAVE DICTIONARY OF
   ECONOMICS AND THE LAW ...............................................................................5

Tamar Frankel, TRUST AND HONESTY (Oxford University Press 2005) ..................6

U.S. Dept. of Labor, Retirement Plans, Benefits & Savings, Fiduciary
   Responsibilities, http://www.dol.gov/dol/topic/retirement/ficuciaryresp.htm ....10

U.S. Securities and Exchange Commission (SEC), Managing Lifetime Income,
   http://investor.gov/employment-retirement/retirement/managing-lifetime-
   income. .................................................................................................... 3

Appellate Case: 12-2060     Page: 5     Date Filed: 05/31/2013 Entry ID: 4040995

## STATEMENT OF IDENTITY AND INTEREST OF AMICI CURIAE

*Amici* are three scholars at American law schools whose research and teaching focus on fiduciary law, investor protection, securities regulation and related subjects. We respectfully submit this amicus brief to bring to the attention of the Court of Appeals additional legal and policy arguments in support of the District Court's March 31, 2012 Order that the ABB defendants breached fiduciary duties owed to two retirement plans offered by ABB, Inc.

Applying trust law, ERISA imposes the highest fiduciary standards upon those responsible for administering and managing ERISA plans. This case demonstrates the importance of ERISA's fiduciary duty of undivided loyalty, which is designed to protect the interests of the many workers whose retirement benefits depend on the faithful execution of their responsibilities by plan fiduciaries, who must act solely in the interests of the plan participants.

Tamar Frankel
Professor of Law, Boston University School of Law
Michaels Faculty Research Scholar

Barbara Black
Charles Hartsock Professor of Law
Director, Corporate Law Center
University of Cincinnati College of Law

David H. Webber
Associate Professor of Law
Boston University Law School

Appellate Case: 12-2060     Page: 6     Date Filed: 05/31/2013 Entry ID: 4040995

*Amici* file this brief as individuals and not as representatives of the institutions with which they are affiliated.

*Amici* have filed a motion for leave to file this amicus brief.  Defendants have stated they will consent to the filing of one private amicus brief on behalf of plaintiffs.

Appellate Case: 12-2060     Page: 7     Date Filed: 05/31/2013 Entry ID: 4040995

## SUMMARY OF ARGUMENT

ERISA imposes on plan fiduciaries the highest standard of loyalty derived from fiduciary law. Fiduciary law is based on principles of entrustment and dependence. The hallmark of the fiduciary relationship is the beneficiary's entrustment to the trustee of property or power, which may involve considerable discretion in the use of the property or power. In addition, fiduciary law reflects the necessary dependence by beneficiaries on their fiduciaries and their corresponding vulnerability to breaches of trust by their fiduciaries. The fiduciary duty to act for the sole benefit of the beneficiaries is thus crucial to prevent abuse of the fiduciaries' power and to induce people to rely on fiduciaries' services.

ERISA borrows from trust law this highest standard of undivided loyalty. Most fundamentally, Section 404(a) of ERISA requires a plan fiduciary to discharge his duties "*solely*" in the interest of the participants and for the "*exclusive*" purpose of providing benefits to participants. The statute imposes this duty on fiduciaries not just to avoid egregious misappropriations, but also to establish a culture of trustworthiness. Plan fiduciaries must never ask the question: "what is in it for me?"

This case demonstrates why ERISA's high fiduciary standard of undivided loyalty is necessary to protect plan participants and cannot be relaxed. Retirement plans and their participants can suffer serious and continuing harm when

1

investment advisers, brokers and other members of the financial services community compete for their business by offering the plan fiduciaries favors in the form of discounted services that are in fact paid for by the plan participants. The District Court's Order correctly found that the ABB Defendants did not live up to their duty of undivided loyalty owed to the ABB retirement plans and their participants and instead made decisions that favored ABB, Inc. and Fidelity.

Appellate Case: 12-2060     Page: 9     Date Filed: 05/31/2013 Entry ID: 4040995

## ARGUMENT

## INTRODUCTION

ABB, Inc. offers its employees two retirement plans (collectively, "PRISM Plans" or "Plans"). These Plans are large, with assets of $1,421.0 million and 17,781 participants as of April 1, 2001 [Order at 53]. Like the plans of many U.S. employers, the PRISM Plans are 401(k) defined contribution plans regulated by the Employee Retirement Income Security Act ("ERISA"). In defined contribution plans, employees bear the investment risks and have no guarantee that their retirement accounts will be adequate for their retirement. [1] Participants in the PRISM Plans depend on the returns from their investments to fund their retirement and depend on the Plan Fiduciaries to exercise their authority and discretion for the exclusive purpose of providing benefits to the participants. As a result of this dependence, it is important that those who are responsible for managing and administering the PRISM Plans live up to their fiduciary responsibilities (1) in selecting and deselecting investments that the participants can choose, (2) in monitoring administrative costs, and (3) in negotiating on behalf of the Plans and their participants for low administrative costs.

---

[1] U.S. Department of Labor data show a trend away from defined benefit plans and toward defined contribution plans. U.S. Securities and Exchange Commission (SEC), Managing Lifetime Income, http://investor.gov/employment-retirement/retirement/managing-lifetime-income.

Appellate Case: 12-2060    Page: 10    Date Filed: 05/31/2013 Entry ID: 4040995

Unfortunately for the employees, the ABB Defendants did not live up to their duty of undivided loyalty to the participants' interests. Indeed, the facts of this case demonstrate why ERISA's high fiduciary standard of undivided loyalty is necessary to protect plan participants and cannot be relaxed. The District Court's Order correctly concluded that ABB Defendants breached their fiduciary obligations.[2]

## I.   ERISA IMPOSES ON PLAN FIDUCIARIES THE HIGHEST STANDARD OF LOYALTY DERIVED FROM FIDUCIARY LAW.

### A.   Fiduciary Law is Based on Principles of Entrustment and Dependence.

Drawing on and reflecting trust law, ERISA imposes the highest standards of fiduciary duty upon those responsible for administering ERISA plans and investing and disposing of their assets, *Martin v. Feilen,* 965 F.2d 660, 664 (8th Cir. 1992). The hallmark of the fiduciary relationship is the beneficiary's entrustment to the trustee of property or power, which may involve considerable discretion in the use of that property or power. This entrustment is necessary so that the fiduciary may perform services in the interests of the beneficiaries of the

_____

[2] We take no position with respect to findings and conclusions of the District Court apart from those discussed in this brief.

4

relationship.[3]  Indeed, fiduciaries cannot be entirely controlled in the use of the entrusted property and power and the performance of their services without undermining the very usefulness of the relationship. The laws that regulate fiduciaries, therefore, are calibrated by the degree of power and property that are entrusted to them; the more entrusted assets and powers fiduciaries hold, the stricter the rules that control their temptation become.[4]

In addition, fiduciary law reflects the necessary dependence by beneficiaries on their fiduciaries and the corresponding vulnerability of beneficiaries to breaches of trust by their fiduciaries.  Fiduciaries' duties, especially the duty to act for the sole benefit of the beneficiaries and no one else, are crucial to prevent misappropriation of the beneficiaries' property.[5]  The property and power with which fiduciaries are entrusted do not belong to them, but are given to them for the *sole purpose* of enabling the fiduciaries to perform their services. Fiduciaries may be tempted to misappropriate what does not belong to them, but is within their control. Holding and controlling other people's money, especially for a long period of time, may create a feeling of ownership and justification for misappropriation.

---

[3] Tamar Frankel, FIDUCIARY LAW 1-78 (Oxford University Press 2010); Tamar Frankel, *Fiduciary Law*, 71 CALIF. L. REV. 795 (1983); Tamar Frankel, *Fiduciary Duties,* in 2 THE NEW PALGRAVE DICTIONARY OF ECONOMICS AND THE LAW 127-128.

[4] Tamar Frankel, *Fiduciary Law*, 71 CALIF. L. REV. 795, 825-26.

[5] Tamar Frankel, FIDUCIARY LAW 106, 107; Tamar Frankel, *Fiduciary Law*, 71 CALIF. L. REV. 795, 824.

Appellate Case: 12-2060    Page: 12    Date Filed: 05/31/2013 Entry ID: 4040995

Habit and the use of other people's property over a long period of time can result in abuse and undermine the trust that is essential to a fiduciary relationship.[6] The purpose of the law is to contain abuse of fiduciary power that may stem from the arrogance attached to holding it.

In addition, the law is designed to induce people to rely on fiduciaries' services by reducing their risk of loss from fiduciaries' abuse of trust.[7] It is a fundamental principle of trust law that fiduciaries are prohibited from dealing with entrusted powers and property as their own and may not benefit from them. Therefore, for example, trustees may not purchase trust property even at market price.[8]

---

[6] *See* Tamar Frankel, TRUST AND HONESTY 27-39 (Oxford University Press 2005) (detailing "slippery slope" from acceptance of abuse to justification to "redefinition" or denial that act is wrong).

[7] Tamar Frankel, *Fiduciary Law,* 71 CALIF. L. REV. 795, 833-34.

[8] "[T]he trustee will not be allowed to profit from a breach of trust, even if the profit does not come at the expense of the trust estate." 4 Austin Wakeman Scott et al., SCOTT AND ASCHER ON TRUSTS § 24.9, at 1686-87 (5th ed. 2007) (footnote omitted) (citing Restatement); *see also id.* § 24.10, at 1708; "[A]ny profits gleaned from [a corporate fiduciary's] improper self-dealing may be recovered by the corporation, and the corporation need not plead a loss of profits in its complaint.*" SafeCard Servs., Inc. v. Halmos,* 912 P.2d 1132, 1135 (Wyo. 1996) (following Delaware law). "Even in the absence of a breach, a trustee is accountable to an affected beneficiary for any profit made by the trustee arising from the administration, such as a receipt by the trustee of a commission or bonus from a third party for actions relating to the trust's administration," Joseph Kartiganer and Raymond H. Young, American Bar Association Probate & Property March/April,

Appellate Case: 12-2060     Page: 13     Date Filed: 05/31/2013 Entry ID: 4040995

In fiduciary law, fiduciaries' actions in conflicts of interest are permissible only if the actions are approved by the courts (in the case of trusts) or by the beneficiaries of the trust. The fiduciaries must provide the beneficiaries full information about the action and ensure that the beneficiaries will be able to make their own decisions on whether to accept or reject the proposed transaction. Accordingly, a beneficiary who has not consented to the trustee's self-dealing transaction may void it, even if the trustee has acted in good faith and even if the transaction is fair and reasonable.[9]

If the fiduciary plans to engage in a conflict-of- interest transaction and pocket the benefits, it must not only obtain the informed consent of the beneficiaries, but also ensure that the beneficiaries are capable of providing their consent. By this process, the fiduciary puts the beneficiary in the position of a contracting party, ensuring that the beneficiary is able to protect itself as any party to a contract would. In such a case the beneficiary receives notice that it cannot and should not rely on the fiduciary, because the fiduciary will act in its own interest, and the beneficiary must protect its own interests.[10]

---

2003 17 Probate & Property 18 FEATURE THE UTC: HELP FOR BENEFICIARIES AND THEIR  ATTORNEYS (2003).

[9] 3 Austin Wakeman Scott *et al.,* SCOTT AND ASCHER ON TRUSTS § 17.2.13 at 1143-44 (5th ed. 2007).
[10] Tamar Frankel, FIDUCIARY LAW Ch. 4.

Appellate Case: 12-2060    Page: 14    Date Filed: 05/31/2013 Entry ID: 4040995

The ABB employees who participate in the PRISM Plans depend on the Plan Fiduciaries to select an appropriate variety of investment options, to administer the Plans, and to keep costs low, for the sole benefit of the participants. Yet, as discussed in Part II, the ABB Defendants, in their role as Plan Fiduciaries, made decisions to benefit ABB and Fidelity, in violation of their duty of undivided loyalty and to which the Plans' participants never consented. Fiduciary law does not recognize excuses for violations of the duty of undivided loyalty – including the excuse that the beneficiaries were not harmed by the violations.

**B.    ERISA Borrows from Trust Law the Highest Standard of Undivided Loyalty.**

In the hierarchy of powerful fiduciaries, ERISA plan fiduciaries are at the top--similar to trustees. Accordingly, Congress intended to incorporate the fiduciary standards of trust law into ERISA; it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration of trust benefits, *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1299 (3d Cir. 1993) (quoting *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 152-53 (1985) (Brennan, J., concurring opinion). Borrowed from trust law, ERISA's fiduciary duties have been described as "the highest known to the law," *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 598 (8th Cir. 2009) (quoting from *Donovan v. Bierwirth,* 680 F.2d 263, 272 n. 8 (2d Cir.1982)). ERISA reflects trust law because plan fiduciaries are entrusted with

8

power and control for relatively long periods, while the plan participant-employees (the beneficiaries) have little or no power to supervise and control them. In addition, many plan participants are heavily dependent on the plan fiduciaries' efforts because they are long-term investors in the plans (subject to tax constraints if they withdraw their savings) and rely on their plan accounts to fund their retirement.

Most fundamentally, Section 404(a) of ERISA provides that "a fiduciary shall discharge his duties with respect to a plan *solely* in the interest of the participants and beneficiaries and-

(A) for the *exclusive* purpose of:

(i) providing benefits to participants and their beneficiaries; ...

29 U.S.C. § 1104(a)(1) (emphasis added). Congress included this provision in order to apply the law of trusts to ERISA plan fiduciaries and to eliminate "such abuses as self-dealing, imprudent investing, and misappropriation of plan funds," *Boyle v. Anderson*, 68 F.3d 1093, 1102 (8th Cir. 1995) (quoting from *Fort Halifax Packing Co. v. Coyne*, 482 U.S.1, 15).

The statutory language is unambiguous. The definition of *"sole"* means "one and only; single, exclusive," Concise Oxford Dictionary of Current English, and *"exclusive"* means "excluding other things" *id.* Unless and until Congress changes the words "solely" and "exclusive," their meaning must govern.

Appellate Case: 12-2060    Page: 16    Date Filed: 05/31/2013 Entry ID: 4040995

The U.S. Department of Labor is equally clear about the fiduciary

obligations of plan fiduciaries:

> The primary responsibility of fiduciaries is to run the plan *solely* in the interest of participants and beneficiaries and for the *exclusive* purpose of providing benefits and paying plan expenses…. They also must avoid conflicts of interest. *In other words, they may not engage in transactions on behalf of the plan that benefit parties related to the plan, such as other fiduciaries, services providers or the plan sponsor*.

> Fiduciaries who do not follow these principles of conduct may be personally liable to restore any losses to the plan, or to restore any profits made through improper use of plan assets. Courts may take whatever action is appropriate against fiduciaries who breach their duties under ERISA including their removal.

U.S. Dept. of Labor, Retirement Plans, Benefits & Savings, Fiduciary Responsibilities, http://www.dol.gov/dol/topic/retirement/fiduciaryresp.htm (emphasis added).

ERISA requires undivided loyalty from plan fiduciaries. They may not act

in any way except for the sole benefit of the plan participants and for the exclusive

purpose of providing benefits to the plan participants. ERISA prohibits plan

fiduciaries from benefitting from their entrusted powers of managing the plans'

funds. The statute imposes this duty on fiduciaries not just to avoid egregious

misappropriations that bring obvious or specific harm to plan participants, but also,

more fundamentally, to establish a culture of trustworthiness. As Congress

recognized, experience and human habits require a strict prohibition on any benefit

that plan fiduciaries accept, *Boyle v. Anderson,* 68 F.3d at 1102 (citing legislative

history). This prohibition is especially important when, as in this case, the benefits

to the Plan Fiduciary are offered by a financial services conglomerate that wears multiple hats – providing both investment advisory and administrative services to the Plans while offering administrative services to the corporate Plan Fiduciary. Plan fiduciaries must never ask the question: "what is in it for me?" Conflicted plan fiduciaries cannot assert as a defense that the plan participants suffered no harm.[11] The sole test for establishing a breach of fiduciary duty is: Did the plan fiduciary use its power as a fiduciary in a conflict of interest? No "ifs, ands, or buts."

As described in Part II, the ABB Defendants, as Plan Fiduciaries, violated their obligation under ERISA to act at all times with undivided loyalty, solely in the interests of the Plans' participants, consistent with the principles of trust law, *Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992).

---

[11] Restatement (Second) of Trusts § 170(1) (1959) (duty of trustee to administer trust "solely in the interest of the beneficiaries"); *id.* cmts. b, k (immaterial that transaction involving self-dealing is fair to beneficiary); Restatement (Third) of Trusts § 78(1) (2007) (duty of trustee to administer trust "solely in the interest of the beneficiaries"); *id.* § 78(2) (general prohibition on transactions involving self-dealing or conflict of interest); id. cmt. b ("[I]t is immaterial that the trustee may be able to show that the action in question was taken in good faith, that the terms of the transaction were fair, and that no profit resulted to the trustee."); 3 Austin Wakeman Scott et al., Scott and Ascher on Trusts § 17.2.13, at 1143-44 (5th ed. 2007) ("Ordinarily, a beneficiary who has not consented to the trustee's self-dealing may void the transaction, even if the trustee has acted in good faith and the transaction is fair and reasonable."); Restatement (Second) of Agency § 387 (1958) (requiring agent to act "solely for the benefit of the principal"); *id.* § 389 (prohibiting agent from acting as adverse party without principal's consent); *id.* cmt. c (rule applies even though transaction is beneficial to principal).

11

## II.    THIS CASE DEMONSTRATES WHY ERISA'S HIGH FIDUCIARY STANDARD OF UNDIVIDED LOYALTY IS NECESSARY TO PROTECT PLAN PARTICIPANTS AND CANNOT BE RELAXED.

Retirement plans offered by large companies, such as ABB, Inc., are very attractive to financial services firms like Fidelity that market a variety of products and services to plans and their corporate sponsors, including mutual funds, investment advisory services and administrative services.  The PRISM Plans had assets of $1.421.0 million and 17,781 participants as of April 1, 2001 [Order at 53]. The ABB Pension Review Committee selects the investment options from which the Plans' participants can chose.  Thus, the Plans supply long-term investors who can provide financial services firms with a steady source of income. In addition, both the Plans and the corporate Plan Fiduciary need administrative services, such as recordkeeping, that can be another source of revenue to financial services conglomerates that have developed capabilities of providing these services.

Thus, large corporate retirement plans have bargaining power.  Advisers and other providers of financial services compete vigorously for this business and may include, as inducements for the retirement plan's business, benefits *to the fiduciary decision makers who control the funds*.  In this way, conflicted relationships may arise from the competition for the plan's business.  With time, moreover, the plan fiduciary's dependence on the services provided by the advisers, brokers, or other

12

financial service providers may grow, and the relationship may become far too cozy. The plan fiduciaries may become accustomed to making decisions that are more favorable to the service providers. Even though they are expected to negotiate vigorously with these providers on behalf of the plans and their participants, plan fiduciaries might tend to neglect the interests of the plans and their participants, whose interests they are charged with protecting. Consequently, the interests of the plans and their participants are likely to be neglected.

In this case the District Court's findings of breach of fiduciary duty over the course of the defendants' relationship are meticulously documented and supported by the factual record. Fidelity Trust was initially selected in 1995 as recordkeeper for the Prism Plans through a competitive bid process and was paid a per-participant, hard dollar fee [Order at 16]. Over time, the terms changed, and Fidelity Trust was primarily paid through "revenue sharing," which Fidelity negotiated for some of the mutual funds. The securities of these funds were selected by the ABB defendants to be on the PRISM Plans' platform [Order at 16]. After becoming the recordkeeper for the PRISM Plans, Fidelity Trust began providing corporate services to ABB: in 1997, to ABB's defined benefit plan; in 1999-2000, to ABB's health and welfare plans; and in 2004, to payroll [Order at

13

4]. Fidelity lost money on these corporate services but made a substantial profit as recordkeeper for the PRISM Plans [Order at 4-5].

The Court found that ABB breached its fiduciary duty to the Plans because it did not monitor the Plans' recordkeeping costs and did not use revenue sharing to reduce the cost of the administrative services to the Plans and the Plans' participants [Order at 15]. Instead, ABB chose to use revenue sharing to reduce the costs of its corporate recordkeeping services at the expense of the Plans' participants. This is precisely the kind of fiduciary abuse of power prohibited by ERISA. Although at one point Fidelity said it was "absorbing" some of these costs [Order at 58], the District Court found, to the contrary, that Fidelity made a substantial, above-market profit as recordkeeper of the PRISM Plans and thus made up for its losses on the corporate services [Order at 4-5]. Mr. Scarpa was aware of these facts, yet took no action to reduce the revenue sharing costs borne by the Plans and the Plans' participants [Order at 58-59]. The District Court found that, beginning in 2001, the ABB defendants *never calculated* the dollar amount of the recordkeeping fees the PRISM Plans paid to Fidelity through revenue sharing and *never considered* leveraging the Plans' size to reduce these costs, even after an outside consultant told ABB that the Plans were overpaying for recordkeeping [Order at 18]. In addition, the District Court specifically found that Mr. Scarpa's decisions when negotiating the Plans' recordkeeping fees were motivated by the

14

discounts ABB received for corporate services [Order at 60]. This is a classic case of ABB's paying for services it received with "other people's money," that is, the participants' money whose investment returns were reduced by excessive revenue sharing costs.

With the passage of time, the relationship between the ABB Defendants and the Fidelity defendants became even cozier and increasingly conflicted. This is demonstrated by the ABB Defendants' decisions which were made contrary to the investment policy guidelines. In 2000, they removed the Vanguard Wellington Fund, a well-known balanced mutual fund with a seventy-year track record offered by Fidelity's biggest competitor, from the Plans' platform of investment choices and replaced it with Fidelity Freedom Funds [Order at 33-39]. The Vanguard Wellington Fund was removed from the Plans' investment options and replaced by the Fidelity Freedom Funds because the Fidelity Freedom Funds generated more in revenue sharing for Fidelity Trust [Order at 41]. In 2005, the ABB Defendants selected or kept more costly classes of investments on the Plans' investment platform when less expensive classes of these same investments were available [Order at 53-54]. When the Fidelity Magellan Fund was removed from the Plans' platform, ABB selected as replacements higher-expense classes of investments in order to provide more basis points for revenue sharing for Fidelity Trust [Order at 53-54]. While revenue sharing is an acceptable industry practice, these decisions

Appellate Case: 12-2060   Page: 22   Date Filed: 05/31/2013 Entry ID: 4040995

were contrary to the investment policy guidelines, which specifically require revenue sharing to be used to offset or reduce the costs of providing administrative services to the Plan participants [Order at 29]. In addition, the PRISM Plans require the selection of share classes with the lowest expense ratios [Order at 55].

This case illustrates the need for an absolute duty of undivided loyalty. These "quid pro quo" relationships present serious dangers to ERISA plans and their plan participants. To be sure, not every possible slippery slope makes a fiduciary fall down. But, as this case demonstrates, retirement plans and their participants can suffer serious and continuing harm when investment advisers, brokers, and other members of the financial services community compete for their business by offering the plan fiduciaries favors in the form of discounted services that are in fact paid for by the plan participants. *See Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 598-600 (8th Cir. 2009) (holding that allegations of breach of fiduciary duty based on failure to disclose revenue sharing arrangement survived motion to dismiss), *Ruppert v. Principal Life Insurance Co.,* 796 F. Supp.2d 959, 963-69 (S.D. Iowa 2010) (similar). Conflicted, thoughtless decision-making becomes "the way we do things" and can lead to corruption. There is a point where a financial services firm's valuable and continuous "gifts" of services for the benefit of the plan fiduciary (and not the plan), coupled with decisions made by the plan fiduciary to select investment products offered by the financial services firm,

16

should be prohibited.   The District Court correctly concluded that ERISA prohibits this "quid pro quo" relationship.

The Plan Fiduciaries cannot argue that the high standards of fiduciary duty no longer apply for the protection of the beneficiaries because the Plans' participants consented to the costly and offensive arrangements.  The Plans' participants had no notice that they could not trust the fiduciaries responsible for managing their retirement funds, and they never consented to the excessive costs imposed on their investments because of these conflicted decisions. Therefore, because ERISA's standards are "the highest known to the law," *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598, the interpretation of plan fiduciaries' duties and liabilities should follow the strict law of trustees' duties.

## CONCLUSION

ERISA's duty of undivided loyalty is designed to nip in the bud a possible pattern of behavior—a habit--of plan fiduciaries asking: "when I make a decision as a plan fiduciary, what is in it for me?" To ask that question is to invite decision-making based on weighing the benefits to the plan fiduciary as against the benefits to the plan participants, rather than on considering solely the benefits to the plan participants.  "What is in it for me?" is likely to result in lack of due diligence and sloppy analysis about what best furthers the interests of the plan participants.

Appellate Case: 12-2060     Page: 24     Date Filed: 05/31/2013 Entry ID: 4040995

This case demonstrates the danger that permitting any benefit to plan fiduciaries in connection with their decisions as fiduciaries can distort their decisions in favor of themselves rather than their beneficiaries. In light of the millions of Americans whose retirement savings are dependent on their decisions, plan fiduciaries should be treated as trustees under a strict prohibition of conflicts of interest.

For the foregoing reasons, we believe that the decision of the District Court should be upheld.

Respectfully submitted,

  s/ Barbara Black

Barbara Black
Charles Hartsock Professor of Law
Director, Corporate Law Center
University of Cincinnati College of Law
P.O. Box 210040
Clifton Ave. & Calhoun St.
Cincinnati, OH 45221-0040
513-556-0113
barbara.black@uc.edu

Attorney for Amici Curiae

May 20, 2013

Appellate Case: 12-2060     Page: 25     Date Filed: 05/31/2013 Entry ID: 4040995

# CERTIFICATE OF COMPLIANCE

I certify that:

(1) this brief complies with Fed. R. App. P. 32(a)(7) because it

Contains 4057 words, excluding the parts of the brief exempted by

Fed. R. App. P. 32(a)(7)(B)(iii);

(2) this brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P.

32(a)(6) because it has been prepared in 14-point Times New Roman font;

(3) the text of the PDF copy of the brief is identical to the text of the

paper copies of this brief; and

(4) the PDF copy of this brief was prepared on a computer that is

automatically protected by a virus detection program, namely a

continuously-updated version of Symantec Endpoint Protection,

and no virus was detected.


Dated: March 20, 2013

 s/ Barbara Black

Barbara Black

Appellate Case: 12-2060    Page: 26    Date Filed: 05/31/2013 Entry ID: 4040995

## CERTIFICATE OF SERVICE

I certify that on March 20, 2013, I electronically filed the foregoing brief via the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users.


s/Barbara Black

Barbara Black